CHARLES G. BATHE, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Springfield Court of Appeals, December 5, 1910.

1. LIFE INSURANCE: Misrepresentation as to Physical Condition: Burden of Proof: Peculiar Knowledge of Plaintiff. In a suit on a life insurance policy the defense was made that the insured had misrepresented her physical condition at the time the policy was issued, and that she was in fact afflicted with tuberculosis at the time, which disease caused her death, and that under the terms of the policy plaintiff should not be permitted to recover. The defendant contended that the burden was upon plaintiff to show that

deceased did not have tuberculosis. *Held*, that the burden was upon the defendant to establish the affirmative allegation in its answer that deceased had tuberculosis at the time the policy was issued. *Held* further, that the evidence did not show that plaintiff had any peculiar knowledge that would change such rule, or any knowledge of the deceased's condition that defendant by proper diligence could not have obtained.

2. ———: ———: ———: Conditions. In an action on a life insurance policy an allegation in the petition that all the conditions of the contract were fulfilled by the assured, even when denied by the answer, does not impose upon plaintiff the burden of proving that each particular condition was fulfilled, but when the breach of any particular condition is relied on as a defense, the burden of proving it is upon the insurance society.

3. ———: Pleading: Burden of Proof: Instructions. In an action on a policy of life insurance, the plaintiff should allege and prove the issuance of the policy, the payment of the premium, the death of the assured, the giving of notice, and the making of proof and the general compliance with the conditions of the policy, and if the answer sets up special and affirmative matters of defense under the terms of the contract, it is error to instruct that plaintiff must prove a compliance with all the terms and conditions of the policy.

4. PRACTICE: Burden of Proof. It has ever been the law that the burden of proving a fact is on the party who asserts the affirmative of an issue.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*Thomas Dolan* for appellant.

(1) The stipulation in the policy that "No obligation is assumed by the company prior to the date hereof nor unless on said date the insured is alive and in sound health," is binding on the parties, and is equivalent to a warranty of the sound health of the insured at the time of the delivery of the policy and is a condition precedent to the liability of the defendant. Thompson v. Insurance Co. (N. D.), 101 N. W.

Bathe v. Insurance Co.

900; Powers v. Association, 50 Vt. 637. (2) The burden is upon the plaintiff to make out his case. That if in the statement of his case, negative averments are required, and the proof of such negative averments is not peculiarly within the knowledge and power of the defendant, then plaintiff must affirmatively establish such negative averments, but if, on the other hand, the proof of such negative averments lies peculiarly within the knowledge or power of the defendant, then such negative averments will be taken as true unless the defendant speaks and disproves them. Swinehart v. Railroad, 207 Mo. 434; Frame v. W. O. W., 67 Mo. App. 135; Fulwider v. L. & P. Co., 216 Mo. 582; Lawson on Presumptive Evidence, 22.

*Mooneyham & Shepherd* for respondent.

(1) Plaintiff has established a prima facie case when he shows the existence of the policy sued on, the death of the insured and proof of death. On the other hand, the burden is on the company to show a violation of the conditions avoiding an otherwise valid policy, or exceptions in the policy which limit the liability of the company. 29 Cyc. 233. (2) The burden of proof as to any particular fact lies on that person who wishes the court to believe in its existence, unless it is provided by any law that the burden of proving that fact shall lie on any particular person. Jones on Evidence (2 Ed.), sec. 181; State v. Deposit Co., 94 Mo. App. 184; Clover v. Henderson, 120 Mo. 367; Hoover v. Insurance Co., 93 Mo. App. 111; Fetter v. Fidelity & Casualty Co., 174 Mo. 256; Jamison v. Casualty Co., 104 Mo. 306; Kane v. Knights of Maccabees, 113 Mo. App. 104; Courtney v. Fidelity Mutual Aid Association, 120 Mo. App. 118; Stephens v. Insurance Co., 120 Mo. App. 89. (3) If the defendant relies either upon the falsity of the representation, or the failure to comply with executory stipula-

tion, it is upon them to prove it; and it is a question for the jury in either aspect.    Daniels v. Hudson Co., 59 Am. Dec. 197; Richard on Insurance (2 Ed.), 344.

NIXON, P. J.—Appellant, on April 5, 1909, issued to one Della Bathe, a policy of insurance on her life, for the benefit of her husband, the respondent, by the terms of which appellant agreed to pay on the proof of her death, $276, or one-half of that sum if she died within six months after the date of the policy.    She died on July 28, 1909, according to the statement of the attending physician in the death proofs, of "(1) chief or primary, consumption, (2) contributing or secondary."    On proof of death being made and appellant refusing to pay, respondent brought suit in a justice's court on the policy, the case later reaching the circuit court where it was tried *de novo*, a verdict being rendered for $140.02.    The defendant below is appellant here.

The petition was in the usual form.    The answer, after admitting the issuance of the policy on April 5, 1909, and denying every other allegation in the petition, contains the following:

"Further answering, says that in the application, which was signed on the 24th day of May (March?) 1909, by Della Bathe, the life who was insured in said policy, she said that she had never been treated within the last two years by any physician for any complaint, which answer was false; and that she had been treated during July and August, 1908, by a physician for tuberculosis, the disease with which she died, and if this had been known to defendant the policy which was issued to her would not have been issued to her.

"Further answering, defendant says that the policy above referred to contains the following: 'Unless otherwise stated in the blank space below in a waiver signed by the secretary, this policy is void if the insured before its date has been rejected for in-

surance by this or any other company, or has been
attended by a physician for any serious disease or com-
plaint; or has had before said date any pulmonary
disease, or chronic bronchitis, or cancer, or disease
of the heart, liver or kidneys.' That the secretary of
said company has not endorsed a waiver of any of
the terms contained therein, and defendant states
that at the time said policy was issued and long prior
thereto, Della Bathe, the life which was insured
therein, was affected with tuberculosis, the disease
with which she died in July, 1909; that defendant did
not know said Della Bathe was affected with said di-
sease until after she died, although it was known to
her at and prior to the time the policy was issued to
her, and said Della Bathe misrepresented the condition
of her life to the defendant at the time said policy
was issued, and if the condition of her life had been
known to defendant said policy would not have been
issued.''

At the conclusion of plaintiff's evidence and again
at the close of all the evidence defendant requested
and the court refused to give a peremptory instruction
that plaintiff had not shown himself entitled to re-
cover.

The policy contained the following provisions:

''.  .  .  In consideration of the payment of the
premium mentioned in the schedule below, on or before
each Monday, doth hereby agree, subject to the condi-
tions below and on page 2 hereof, each of which is
hereby made a part of this contract and contracted by
the assured to be a part hereof, to pay upon receipt
of proofs of the death of the insured made in the man-
ner, to the extent and upon the blanks required here-
in, and upon surrender of this policy and all receipt
books, the amount stipulated in said schedule.  Pro-
vided, however, that no obligation is assumed by the
company prior to the date hereof, nor unless on said
date the insured is alive and in sound health.'' (Un-

der the head of "Conditions"); "Unless otherwise stated in the blank space below in a waiver signed by the secretary, this policy is void if the insured before its date has been rejected for insurance by this or any other company, or has been attended by a physician for any serious disease or complaint; or has had before said date any pulmonary disease, or chronic bronchitis, or cancer, or disease of the heart, liver or kidney."

The contention upon which appellant rests this appeal is that the burden of proving that deceased was in sound health on April 5, 1909—that is, that she did not have tuberculosis—rested upon the plaintiff, and that as plaintiff's evidence wholly failed to establish this, the peremptory instruction was erroneously refused. That defendant did not proceed on this theory in the trial court will appear presently when we consider the attempts made by defendant to prove this part of the case.

Plaintiff, as a witness, after stating that the premiums on the policy were duly paid, etc., testified that his wife gave birth to a child on April 15, 1909, ten days after the policy was issued, and was sick thereafter all the time until her death on July 28, 1909. That he first discovered she had tuberculosis some time in June, 1909 (when Dr. Blackwell made an examination) and the witness stated that she died of quick consumption. The testimony of Dr. Blackwell, for the plaintiff, contains nothing helpful here. Dr. Thornton, defendant's witness, testified: "A. I gave her a few prescriptions to alleviate her condition in early pregnancy and at that time she was run down and coughing a little and I advised Mr. Bathe to take her out West, thinking it would benefit her in a general way and if there was a tendency to tuberculosis it would do her a great deal of good. Q. Had you examined Mrs. Bathe at that time you talked to Mr. Bathe? A. In what way do you mean? Q. Observed her, looked at her? A. Oh, yes, in a general way as you would

do in prescribing for people that are complaining. Q. How long had you known her previous to that time? A. I don't know; several years. Q. How many times did you visit her during that time? A. I don't think I ever made a visit to her. I think all the visits she made to the office. Q. How many times did she come to the office? A. Not very many. I only treated her for that—nothing relative to her last sickness. I know nothing about that. Q. Doctor, if Della Bathe died on the 28th day of July, 1909, of tuberculosis and in June of the same year she was discovered to have an advanced stage of tuberculosis and after your examination of her at the time you did examine her, and in June she was so advanced she couldn't be taken to a sanitarium for treatment, and after your examination of her several months before, say eight or nine, what would you say about her having tuberculosis at the time you saw her? (Objected to because he was her doctor.) The Court: It seems to me this witness having examined her, his own knowledge on the subject, instead of basing it on a hypothetical question, would be more proper. If it is admissible it is admissible as direct knowledge on his part and not under hypothetical question. He can testify to what he found, if it is admissible. I want to hear you on that. Q. I will ask you then the question, whether from your knowledge of this woman what would you say about her having tuberculosis on the 5th day of April, 1909." (Same objection.) And the court sustained the objection. On cross-examination, plaintiff asked Dr. Thornton this question: "Isn't it impossible for anyone to determine whether an individual has tuberculosis trouble without a microscopical examination of the sputum or discharge from the person?" Upon strenuous objection, however, the question was abandoned.

The burden of proving that deceased had tuberculosis at the time of the issuance of the policy was not upon the plaintiff. The answer of the defendant stated

affirmatively that deceased had tuberculosis at that time. It has ever been the law that the burden of proving a fact is on the party who asserts the affirmative of the issue. [Glover v. Henderson, 120 Mo. 367, 25 S. W. 175; State ex rel. v. Fidelity & D. Co., 94 Mo. App. 184, 67 S. W. 958.] In an action on a policy of insurance, as we said in the case of Stephens v. Fire Assn. of Philadelphia, 139 Mo. App. 369, 123 S. W. 63, "the plaintiff should allege and prove the issuance of the policy, the payment of the premium, the death of the assured, the giving of notice, and the making of proof and the general compliance with the conditions of the policy, and if the answer sets up special and affirmative matters of defense under the terms of the contract, it is error to instruct that plaintiff must prove a compliance with all the terms and conditions of the policy." Again, in 29 Cyc. 233, we find the law stated as follows: "An allegation in the complaint that all the conditions of the contract were fulfilled by the assured (as was substantially alleged in this case) even when denied by the answer, does not impose on plaintiff the burden of proving that each particular condition, was fulfilled, but when the breach of any particular condition is relied on as a defense, the burden of proving it is upon the society."

But, contend appellant's counsel, the averment that deceased was not in sound health at the time of the issuance of the policy was, according to the manner in which it was pleaded in the answer, a negative averment, and that the trial court erroneously required the defendant to establish the existence of this negative when the proof lay peculiarly within the knowledge of the plaintiff and it was therefore incumbent upon the plaintiff to make the proof. How it can be seriously maintained that the knowledge of such facts lay peculiarly within the plaintiff's knowledge, if we keep in mind the plaintiff's testimony, we are at a loss to understand. The plaintiff, as a witness, ex-

pressly testified that he first discovered that his wife had tuberculosis in June, 1909, about a month before she died; that she had given birth to a child on April 15, 1909, and was sick from that time on until her death; and finally, that she died of quick consumption, which, as is well known, progresses rapidly. There is not a line in the entire record which would warrant the belief that plaintiff had such "peculiar knowledge" as defendant's counsel undertake to impute to him, or which the insurance company could not have obtained by proper diligence. Moreover, the plaintiff, as we have stated, went upon the witness stand, and any facts within his knowledge were open to the investigation of the defendant. Such a rule of proof applied to this particular class of cases would in many instances render it impossible for the beneficiary to collect the money due under the policy. Perfect health is seldom to be found among men. "We are all born," said Lord Mansfield, "with the seeds of mortality in us." Disease may be, and often is, so hidden or concealed that the assured himself is unconscious of its ravages until the very shadow begins to fall. The judgment will be affirmed. All concur.