Bob L. HYMER, Plaintiff-Appellant,

v.

DUDE HINTON PONTIAC, INC., Defendant-Respondent.

No. 7808.

Springfield Court of Appeals.

Missouri.

Feb. 24, 1960.

**468**

Douglas & Douglas, Neosho, for plaintiff-appellant.

Roy Coyne, Joplin, for defendant-respondent.

STONE, Presiding Judge.

On July 17, 1957, plaintiff Hymer purchased a 1957 Pontiac Bonneville convertible from defendant, Dude Hinton Pontiac, Inc., at Joplin, Missouri. Plaintiff paid "the suggested list price" of $5,709.64 by issuing a $100 check to defendant, trading to defendant a mortgaged 1954 Cadillac automobile for which plaintiff was allowed the net sum of $1,559.64, and executing an installment note (hereinafter referred to as the purchase money note) for the balance. Treating the Pontiac as a new automobile (as did plaintiff and his counsel upon trial of the instant case), J. N. "Dude" Hinton, defendant's president with whom plaintiff dealt, at the time of sale delivered a "car sales order" to plaintiff and also tendered to him (so Hinton said) an "Application for Missouri Certificate of Title" which plaintiff did not take because "he was in a hurry" to leave on a trip and "didn't want to pay the sales tax" at that time. No certificate of title for the Pontiac having been assigned to or obtained by him, plaintiff returned the Pontiac to defendant's place of business on a Sunday afternoon in April 1958. After waiting ten minutes for "Dude" Hinton (then busy with a customer), plaintiff "got tired of waiting," handed the Pontiac keys to a salesman, and asked him to tell Hinton that plaintiff had "brought the Pontiac back" and wanted his 1954 Cadillac and a refund of his payments on the Pontiac. In the period of about nine months during which he had the Pontiac, plaintiff had made seven monthly payments of $134.88 each on the purchase money note; and, when the Pontiac was returned to defendant in April 1958, either one monthly installment (as plaintiff admitted) or two monthly installments (as defendant said) were past due on that note. On April 23, 1958, plaintiff filed this action at law for (a) "return to the plaintiff" of $2,603.80, that being the sum total of the $100 paid to defendant at the time of sale, the payments aggregating $944.16 on the purchase money note, and the net allowance of $1,559.64 for the 1954 Cadillac

traded to plaintiff, and (b) punitive damages of $5,000. Following trial by the court, sitting as a jury, judgment was entered for defendant. Abandoning his prayer for punitive damages, plaintiff appeals from the adverse judgment on his request for "return" of $2,603.80.

■ Although (as we have noted) both parties to this suit apparently treated the Pontiac as a new automobile, plaintiff's evidence upon trial showed that on July 8, 1957, a Missouri certificate of title for the Pontiac had been issued to "Pontiac Motor Division" at Kansas City, Missouri, and on July 10, 1957, had been assigned on the reverse side to defendant. Whether "Dude" Hinton had this certificate of title when plaintiff purchased the Pontiac on July 17, 1957, was disputed bitterly. Both plaintiff and his wife insisted that Hinton did, but he testified just as positively that he did not. In the absence of any specific finding thereon by the trial court, this issue was ruled against plaintiff by the general finding and judgment for defendant. Section 510.310, subd. 2, 31 V.A.M.S.; Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 786(3); Shirley v. Norfleet, Mo., 315 S.W.2d 715, 721. However, in our view of the case, plaintiff would not be entitled to recover even if his evidence on this issue were accepted.

■■ True, the attempted sale of "any motor vehicle * * * registered under the laws of this state" is illegal, fraudulent and void unless, at the time of delivery of such motor vehicle, the certificate of title therefor is assigned and delivered to the buyer. Section 301.210, subd. 4, 16 V.A.M.S.; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605, 608(6), and cases cited in footnote 9; Bordman Investment Co. v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72, 78(7); Haynes v. Linder, Mo. App., 323 S.W.2d 505, 511(10). But, before the buyer of a motor vehicle under a contract of sale made illegal by Section 301.210 may recover in an action at law what he has paid therefor, he must show

(1) that he has repudiated such illegal contract while it remains executory (i.e., before assignment and delivery of a proper certificate of title) *and within a reasonable time,* and (2) that he has returned, or offered to return, the motor vehicle in substantially as good condition as it was when received by him. Kesinger v. Burtrum, supra, 295 S.W.2d loc. cit. 609(7) and cases cited in footnote 10; Albright v. Uhlig, Mo.App., 315 S.W.2d 471, 475(6); Matthews v. Truxan Parts, Inc., Mo.App., 327 S.W.2d 28, 36(6), 39(16). These are essential elements of any action at law, such as the case at bar [Winscott v. Frazier, Mo.App., 236 S.W.2d 382, 383; Riss & Co. v. Wallace, 239 Mo.App. 979, 989, 195 S.W.2d 881, 886; Jones v. Norman, Mo. App., 24 S.W.2d 191, 194(1)]; and, in keeping with the general rule that the burden always rests upon the plaintiff in any action to prove all factual elements essential to his recovery [White v. Prudential Ins. Co. of America, 235 Mo.App. 156, 167, 127 S.W.2d 98, 104(9); Turner v. National Benevolent Soc., 224 Mo.App. 463, 466, 28 S.W.2d 125, 126(3)], instant plaintiff was under the burden of showing the above-stated elements, as a prerequisite to his recovery herein. Stone v. Kies, Mo. App., 227 S.W.2d 85, 88; Keyser v. O'Meara, 116 Conn. 579, 165 A. 793(2).

■ Thus, our first inquiry becomes whether plaintiff repudiated the contract of sale of the Pontiac (assuming, for the purposes of this opinion, that such contract was an illegal one) within a reasonable time after he had discovered, or in the exercise of ordinary care should have discovered, the ground for repudiation of the contract. Kesinger v. Burtrum, supra, 295 S.W.2d loc. cit. 609(9). Of course, instant plaintiff had actual knowledge on July 17, 1957, of the sole ground for repudiation upon which he relies in this action, namely, that defendant then failed to assign and deliver a certificate of title for the Pontiac; and, from and after the date of sale, plaintiff knew, or was charged with knowledge of the fact, that he was a party to an il-

legal, fraudulent and void transaction and (on his own version of the matter) was subject to criminal prosecution for the commission of a misdemeanor. Sections 301.210 and 301.440, 16 V.A.M.S.; State v. Clemmons, Mo.App., 283 S.W.2d 919. Nevertheless, plaintiff's evidence indicates that defendant's failure to furnish a certificate of title for the Pontiac was mentioned only twice after the date of sale, to-wit, (1) when plaintiff's wife asked an unidentified office girl for the title upon payment during August 1957 of the first monthly installment on the purchase money note, and (2) when plaintiff himself "a couple or three months later" told "Dude" Hinton that "I (plaintiff) had to have the title for the car because I had to purchase my license, and he gave to me some kind of reason, I don't know what it was now, that the girl wasn't there, or something."

■ Where fair-minded men reasonably may differ as to whether the buyer has exercised his right of repudiation with reasonable promptness, the issue remains one of fact; but where, in the light of all of the facts and circumstances in the case, the period suffered to elapse between delivery to the buyer and his attempted repudiation is so long that fair-minded men would not differ in opinion, it becomes the duty of the court to pronounce the delay unreasonable as a matter of law.[1] Noting

carefully that this is *not* a case in which the delay in attempted repudiation may be excused as invited by or responsive to the seller's action or assurances,[2] or in which the buyer may not be charged with immediate knowledge of the alleged ground for repudiation [contrast Kesinger v. Burtrum, supra, 295 S.W.2d loc. cit. 609–610], examination of many reported cases confirms our view that instant plaintiff's purported repudiation in April 1958, about nine months after actual knowledge of the alleged ground for repudiation came to him at the time of sale on July 17, 1957, was not timely;[3] and, on the record before us, we so declare as a matter of law.

■ Furthermore, although instant plaintiff recognized in his petition the necessity of restoration of the status quo ante and pleaded that "defendant has been restored to defendant's original status with return of Pontiac in as good a condition as when traded," not a syllable of evidence was offered to support the quoted allegation. Common sense and experience suggest the palpable improbability that, after nine months' use by plaintiff, the Pontiac would have been "in as good a condition as when traded"; but, in any event, plaintiff was not entitled to recover with the record significantly silent on this subject. Albright v. Uhlig, supra, 315 S.W.2d loc. cit. 475; Smith v. G. F. C. Corp., Mo.App., 255

1. Stone v. Kies, Mo.App., 227 S.W.2d 85, 88(4, 5); Sterling Silver Mfg. Co. v. Worrell, 172 Mo.App. 90, 100–101, 154 S.W. 866, 869; Emery v. G. H. Boehmer Shoe Co., 167 Mo.App. 703, 151 S.W. 174; Manley v. Crescent Novelty Mfg. Co., 103 Mo.App. 135, 77 S.W. 489, 490 (3, 4); World Publishing Co. v. Hull, 81 Mo.App. 277, 280; Metropolitan Rubber Co. v. Monarch Rubber Co., 74 Mo.App. 266, 271(3); Pierce Steam Heating Co. v. A. Siegel Gas Fixture Co., 60 Mo.App. 148, 154(2); Viertel v. Smith, 55 Mo.App. 617, 620; Tower v. Pauly, 51 Mo.App. 75, 83–84(2).

2. Contrast Lebcowitz v. Simms, Mo.App., 300 S.W.2d 827, 829; Witte v. Cooke Tractor Co., Mo.App., 261 S.W.2d 651, 656–657(7); Dubinsky v. Lindburg Cadil-

lac Co., Mo.App., 250 S.W.2d 830, 832 (4); Aeolian Co. of Missouri v. Boyd, Mo. App., 65 S.W.2d 111, 113–114(5); Laumeier v. Dolph, 145 Mo.App. 78, 130 S.W. 360, 362(2).

3. See again the cases cited in footnote 1, supra. See also Sinclair Refining Co. v. Nat. L. McGuire Oil & Supply Co., Mo. App., 221 S.W. 378, 381–382(1); Bush v. Norman, Mo.App., 199 S.W. 721(2); Bayer Steam Soot Blower Co. v. City of Milan, Mo.App., 199 S.W. 712(1); Rigler v. Reid, 186 Mo.App. 111, 171 S.W. 952, 955(6); Long v. International Vending Mach. Co., 158 Mo.App. 662, 139 S.W. 819; Collins v. Skillings, 224 Mass. 275, 112 N.E. 938(3); Hamilton v. Sterling Motor Truck Co. of New England, 52 R.I. 328, 160 A. 866.

S.W.2d 69, 71(3); Winscott v. Frazier, supra, 236 S.W.2d loc. cit. 383; Stone v. Kies, supra, 227 S.W.2d loc. cit. 88(6).

The judgment for defendant is affirmed.

McDOWELL and RUARK, JJ., concur.